Filed 3/6/26  In re J.F. CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| In re J.F. et al., Persons Coming Under the Juvenile Court Law. | |
| ORANGE COUNTY SOCIAL SERVICES AGENCY,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>G.G. et al.,<br><br>    Defendants and Appellants. | G066037<br><br>(Super. Ct. No. 25DP0821, 25DP0822, 25DP0823, 25DP0824)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Jennifer McCartney, Judge. Vacated in part and affirmed.

Megan Turkat Schirn, under appointment by the Court of Appeal, for Defendant and Appellant G.G.

Neale B. Gold, under appointment by the Court of Appeal, for Defendant and Appellant V.G.

Leon J. Page, County Counsel, Debbie Torrez and Aurelio Torre, Deputy County Counsel, for Plaintiff and Respondent.

No appearance for the Minors.

\*      \*      \*

## INTRODUCTION

G.G. (Mother) is the mother of J.F., Ja.F., M.F., and G.F (collectively the Minors), who were taken into protective custody in July 2025. V.G. (Father) is the presumed father of M.F. and G.F. Mother and Father appeal from dispositional orders declaring the Minors to be dependent children of the court and removing them from parental custody. Mother and Father's sole claim of error is the juvenile court's finding that the Indian Child Welfare Act, 25 U.S.C. section 1901 et seq. (ICWA) did not apply. Mother and Father argue that Orange Counsel Social Services Agency (SSA) did not undertake the required ICWA inquiry before the juvenile court made the dispositional orders.

SSA concedes it did not fulfill its duty of inquiry under ICWA. SSA disagrees with Mother and Father, however, over what our disposition should be. SSA contends we should vacate the ICWA findings and otherwise affirm the dispositional orders with directions. Mother and Father contend we should conditionally reverse the dispositional orders with directions for the juvenile court and SSA to comply with its duty of inquiry under ICWA.

We conclude the proper disposition is to vacate the ICWA findings and otherwise affirm the dispositional orders.

## FACTS AND PROCEDURAL HISTORY

We present an abridged statement of facts limited to the issue presented by this appeal.

2

On July 19, 2025, the Minors were taken into protective custody. They were allowed to remain in the care of Mother with specific orders. Two days later, those orders were violated, and the Minors were removed from Mother's care.

A dependency petition was filed on July 22, 2025. As to Mother and Father, the petition asserted a claim of risk of harm and failure to protect pursuant to Welfare and Institutions Code section 300, subdivision (b)(1).[1] The petition alleged Mother and Father had placed the Minors at substantial risk of serious physical harm risk due to Mother and Father's "minimization of domestic violence, substance abuse, and mental health issues, and their refusal to comply with Juvenile Court orders." The petition also alleged, among other things, that Mother and Father were unable to protect the Minors' safety and wellbeing, Mother and Father continued to expose the Minors to acts of domestic violence, Father had unresolved mental health, anger management, and substance abuse issues.

On the dependency petition, boxes were marked to indicate the social worker had questioned Mother and Father about each Minor's Indian[2] status and that neither Mother nor Father had given the social worker any reason to believe any Minor is or might be an Indian child. Mother and

---

[1] Further code sections are to the Welfare and Institutions Code unless otherwise identified.

[2] "The language of both federal and state law uses the term 'Indian.' California courts have used alternative terms, such as 'American Indian' or 'Native American'; we use the term 'Indian' throughout to reflect the statutory language but keep the terminology used by the various courts when quoting from their opinions. No disrespect is intended." (*In re Dezi C.* (2024) 16 Cal.5th 1112, 1125, fn. 1 (*Dezi C.*).)

Father each filed an ICWA–020 form indicating that neither knew that any of the Minors had Indian heritage.

Mother and Father were present at the detention hearing on July 23, 2025. They denied the allegations of the petition. In response to questions from the juvenile court, both Mother and Father denied having any Indian or Native Alaskan heritage. The court found that, at the time, ICWA did not apply to any of the children. The court ordered the Minors be detained, removed custody from Mother and Father (as to M.F. and G.F.), and vested care with SSA.

During the week following the detention hearing, the social worker spoke with Mother, Father, a maternal aunt, and the maternal grandmother. All denied Indian ancestry. Mother and Father again denied Indian ancestry at a Child and Family Team meeting on August 8, 2025. The social worker spoke with a paternal uncle (F.A.) and a paternal aunt (A.M.) about placement of the Minors but did not ask either of them about Indian ancestry.

A contested jurisdiction/disposition hearing was conducted on September 22, 2025. Mother testified. At the conclusion of the hearing, the juvenile court found the allegations of the petition (as amended by interlineation) to be true by a preponderance of the evidence and declared the Minors to be dependent children of the court. The court removed custody from Mother and Father, vested custody with SSA, approved a visitation plan, and approved the case plan presented by SSA, which included reunification

4

services for both Mother and Father. The court found that "ICWA does not apply in this matter."[3]

## DISCUSSION

### I. SSA Did Not Comply With Its ICWA Duties

"ICWA establishes minimum standards for state courts to follow before removing Indian children from their families and placing them in foster care or adoptive homes and does not prohibit states from establishing higher standards." (*Dezi C., supra*, 16 Cal.5th at p. 1129.)

The juvenile court and the county welfare department (here, SSA) "have an affirmative and continuing duty to inquire whether a child" who is the subject of a dependency petition "is or may be an Indian child." (§ 224.2, subd. (a).) ICWA and related California law impose on the juvenile court and a county welfare agency a duty to inquire, a duty of further inquiry, and a duty to provide ICWA notice. (*Dezi C., supra,* 16 Cal.5th at pp. 1131–1133.)

The duty to inquire "begins with the initial contact" and includes "asking a party reporting child abuse or neglect whether the party has any information that the child may be an Indian child." (§ 224.2, subd. (b)(1).) "Section 224.2, subdivision (b) specifies that once a child is placed into the temporary custody of a county welfare department, the duty to inquire 'includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child.'" (*Dezi C., supra*, 16 Cal.5th at p. 1132.)

---

[3] A juvenile court's finding that ICWA does not apply in a proceeding implies the social services agency fulfilled its duty of inquiry. (*In re Dominick D.* (2022) 82 Cal.App.5th 560, 567.)

5

"'[E]xtended family member' means 'a person who has reached the age of eighteen and who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent.'" (*Ibid.*, quoting 25 U.S.C. § 1903(2).)

The duty of further inquiry arises if the court or social worker "has reason to believe that an Indian child is involved in a proceeding." (§ 224.2, subd. (e).) This duty of further inquiry includes (1) interviewing parents and extended family members to gather certain information, (2) "[c]ontacting the Bureau of Indian Affairs and the State Department of Social Services for assistance in identifying the . . . tribes in which the child may be a member, or be eligible for membership," and (3) "[c]ontacting the tribe or tribes and any other person [who] may reasonably be expected to have information regarding the child's membership, citizenship status, or eligibility." (*Id.*, subd. (e)(2)(A)-(C)); see Cal. Rules of Court, rule 5.481(a)(4) [same requirements].)

The duty to provide ICWA notice is triggered if, after the duty of inquiry and of further inquiry are satisfied, the court or the county welfare agency "knows or has reason to know . . . that an Indian child is involved" in the dependency proceedings. (§ 224.3, subd. (a).) Notice pursuant to ICWA must be given to the tribes identified through inquiry to enable them "'to determine whether the child involved in a dependency proceeding is an Indian child and, if so, whether to intervene in, or exercise jurisdiction over, the matter.'" (*Dezi C., supra,* 16 Cal.5th at p. 1133.)

Mother and Father contend, and SSA concedes, that SSA did not satisfy its duty of inquiry because it knew of and communicated with paternal uncle and paternal aunt but did not ask them about Indian ancestry. We agree. Section 224.2, subdivision (b) imposed on SSA the duty to

6

ask "'[e]xtended family members'" whether the Minors might have Indian ancestry, and extended family members include aunts and uncles. (*Dezi C., supra*, 16 Cal.5th at p. 1132.)

## II. The Proper Disposition

Having concluded that SSA did not satisfy its duty of inquiry, we must decide what is the proper disposition of this matter. Mother and Father argue it is conditional reversal; SSA argues it is to vacate the ICWA findings and otherwise affirm. We agree with SSA.

In *Dezi C.*, the California Supreme Court held that "error resulting in an inadequate initial Cal–ICWA inquiry requires conditional reversal with directions for the child welfare agency to comply with the inquiry requirement of section 224.2, document its inquiry in compliance with rule 5.481(a)(5), and when necessary, comply with the notice provision of section 224.3." (*Dezi C., supra*, 16 Cal.5th at p. 1136.) "There is no indication of any error in the dependency proceedings that would justify the outright reversal of the judgment terminating parental rights. Thus, full reversal of the section 366.26 judgment is not warranted; rather, a conditional reversal in order to comply with Cal-ICWA is appropriate. Indeed, conditional reversal appears to be common practice in a number of cases involving inadequate ICWA inquiries." (*Id.* at p. 1137.)

Although *Dezi C.* might appear to resolve the issue of the correct disposition, it differs from the present case in that *Dezi C.* was an appeal from an order terminating parental rights. (*Dezi C., supra*, 16 Cal.5th at p. 1127.) Once parental rights have been terminated, there is no ongoing dependency proceeding in which to conduct ICWA inquiry and make findings regarding its applicability. The dissent in *Dezi C.* raised this distinction and

explained how it might be important in other cases: "[T]hough the instant case presents an appeal from an order terminating parental rights, other cases may arise in the context of an interlocutory appeal, where dependency proceedings are still ongoing. (See, e.g., *S.H.* [2022] 82 Cal.App.5th [166], 171, 179; *In re Baby Girl M.* (2022) 83 Cal.App.5th 635, 638.) In such a case, some Court of Appeal decisions find that because the Department has a *continuing* duty of inquiry and because, unlike the present case, there will necessarily be further dependency proceedings in the juvenile court, reversal based upon a prior failure to adequately inquire as to Indian ancestry may be unnecessary. (See *S.H.*, at p. 179 ['So long as proceedings are ongoing and all parties recognize the *continuing* duty of ICWA inquiry,' then 'disturbing an early order in a dependency proceeding is not required where, as here, the court, counsel, and the Agency are aware of incomplete ICWA inquiry'].) Though this fact pattern is neither presented nor decided here, this may be another way to avoid needless reversal in cases involving such a procedural posture." (*Dezi C., supra*, 16 Cal.5th at p. 1169, fn. 5 (dis. opn. of Groban, J.).)

In *In re S.H.* (2022) 82 Cal.App.5th 166 (*S.H.*), the social services agency's failure to satisfy the ICWA duty of inquiry was raised, as in the present case, in an appeal from the dispositional order. (*Id.* at pp. 170–171.) In *S.H.*, as in the present case, the social services agency admitted it had erred by not interviewing certain family members about potential Indian ancestry. (*Id.* at p. 171.) Reversal of the disposition order was not required, however, because "[s]o long as proceedings are ongoing and all parties recognize the *continuing* duty of ICWA inquiry, both the Agency and the juvenile court have an adequate opportunity to fulfill those statutory duties." (*Id.* at p. 179.) The Court of Appeal held, "when a social services agency accepts its obligation to satisfy its inquiry obligations under ICWA, a reversal

of an early dependency order is not warranted simply because a parent has shown that these ongoing obligations had not yet been satisfied as of the time the parent appealed." (*Ibid*.; see *In re Dominick D., supra*, 82 Cal.App.5th at p. 567 ["ICWA inquiry and notice errors do not warrant reversal of the juvenile court's jurisdictional or dispositional findings and orders other than the ICWA finding itself"]; see also *D.S. v. Superior Court* (2023) 88 Cal.App.5th 383, 388 ["ordinarily, the failure to comply with statutory duties under ICWA is not grounds for reversal of juvenile dependency orders issued prior to termination of parental rights"].)

In *In re Baby Girl M.* (2022) 83 Cal.App.5th 635, 636–637, the only issue raised in the father's appeal from a disposition order was the social services agency's compliance with ICWA. The social services agency conceded it had not fulfilled its duty of further inquiry. (*Id*. at p. 638.) The Court of Appeal concluded the appeal was moot because there would necessarily be further dependency proceedings in the juvenile court and all the appellate court could order in resolving the appeal was that the social services agency fulfill its inquiry and notice obligations under ICWA, which is what the agency already was doing. (*Id*. at pp. 638–639.)

We agree with the reasoning of the dissent in *Dezi C.* and the cases concluding reversal is unnecessary when the juvenile dependency proceeding is ongoing. The majority opinion in *Dezi C.* did not disapprove *S.H.*, *In re Dominick D.*, *D.S. v. Superior Court*, or *In re Baby Girl M.* (*Dezi C., supra*, 16 Cal.5th at p. 1152, fn. 18 [citing disapproved cases].)

9

## DISPOSITION

The juvenile court's finding that ICWA does not apply to this matter is vacated. The dispositional orders are otherwise affirmed. SSA and the juvenile court are admonished to complete their duties under ICWA.


SANCHEZ, J.

WE CONCUR:


MOTOIKE, ACTING P. J.


DELANEY, J.